UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES CURTIS KERN, | No. 2:24-cv-2615 WBS CSK P |
| Plaintiff, | ORDER |
| v. | |
| SACRAMENTO COUNTY MAIN JAIL, | |
| Defendant. | |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983. As set forth below, plaintiff's first amended complaint ("FAC") is dismissed with leave to amend.

I.  PLAINTIFF'S FIRST AMENDED COMPLAINT

A. First Claim

In his verified FAC, plaintiff first challenges the conditions of confinement at the Sacramento County Jail, listing the following violations: "breach of the standard of care, failure to treat health consequences of his allergic reaction to mold, and violated Fourteenth Amendment." (ECF No. 14 at 4.)  Plaintiff alleges as follows. On October 7, 2022, plaintiff was put in contaminated cell 5e213 where a black mold was seeping through the baseboard. (Id.) Plaintiff began experiencing sharp pains on the left side of his chest, breathing problems and abdominal pain. Plaintiff pushed the emergency button several times, informing the 5e control

1

room deputy that mold was in plaintiff's cell, plaintiff was having chest pain and breathing problems, and plaintiff has severe allergic reactions to mold. (Id.) "The deputy gave very little to no concern." (Id.) On October 18, 2022, plaintiff's symptoms became more severe, and he pushed the emergency button several times but was ignored for hours. (Id.) When the deputy from 5e control answered, plaintiff informed him plaintiff was having very bad chest pain on the left side, abdominal pain and breathing problems; the deputy told plaintiff to hold on and failed to prioritize the situation. (Id.) One hour and fifteen minutes later, the deputy showed up; a puddle had formed on the cell floor seeping through the baseboard from the shower next door. (Id.) The mold was apparent, and plaintiff contends that the deputy's body camera got excellent footage of the mold in the cell. (Id.) Plaintiff was transported Code 3 to the Sutter Hospital emergency room. Chest x-ray and mold panels were taken, and it was determined that plaintiff is allergic to mold. (Id.)

Plaintiff continued having chest pains, breathing problems and numbness and weakness in his left arm, and on October 20, 2022, was again transported to the Sutter Hospital emergency room. (Id. at 5.) Plaintiff was then put in cell 6w228 which was contaminated with backed up plumbing and mold issues. (Id.) Plaintiff pushed his emergency button several times but did not get a response for an hour. Plaintiff explained to the 6west control room deputy that plaintiff could not breathe and was having bad chest pain, but plaintiff was left in the cell for over 45 minutes. (Id.) Plaintiff was then transported to the Sutter Hospital emergency room. (Id.)

Plaintiff claims these incidents were not put in the "flowsheet" or medical records and alleges that the records were destroyed. (Id.) Three months later, plaintiff received an inhaler and alleges that doctors changed his medical record to "chronic asthma problem" rather than allergic reaction to mold. (Id.)

As a result, plaintiff sustained chest wall damage, ongoing pain, and fluttering in his chest. (Id. at 4.) Further, the falsification of his medical records resulted in more severe complications and permanent nerve damage. (Id.)

B. Second Claim

In his second claim, plaintiff challenges the medical care provided at the Sacramento

2

1  County Jail, listing the following: "violation of his Fourteenth Amendment rights, and failed to
2  meet the standard of care." (Id. at 6.) Plaintiff alleges as follows. Following his multiple trips to
3  the emergency room, on October 21, 2022, the blood pressure cuff wouldn't read plaintiff's left
4  arm, so his right arm was used, but the results were not "dispersed into the flowsheet." (Id.) On
5  or about October 27, 2022, an Asian nurse in 2 west medical placed a blood pressure cuff on
6  plaintiff's left arm, using it incorrectly, and she left it unattended as an automatic monitor. (Id.)
7  The cuff inflated and deflated twice. As it inflated the third time, the cuff overinflated, reaching
8  over 300 mm's, causing plaintiff to yell.[1] (Id.) Plaintiff returned to his cell in great pain, where
9  he noticed a mass on his forearm that had not been there before. (Id.) Plaintiff immediately
10 pushed his emergency button, informing the floor officer of the injury and plaintiff's need to
11 return to medical. Hours later, plaintiff was called to medical where they "did very minimal
12 examination." (Id. at 6.)

   After submitting ten medical record release forms, plaintiff did not receive medical
14 records for 18 months, at which time he discovered that the injuries he suffered while at the
15 Sacramento County Jail were not included. A March 31, 2023 MRI revealed a large mass on his
16 left forearm said to be possibly malignant and not a simple cyst. (Id.) Subsequent exams show
17 upper extremity damages to his bicep: "brachialis radial muscle damage from the blood pressure
18 cuff." (Id.) Plaintiff adds "[t]oday all of [his] specialist appointments are continuously being
19 cancelled."[2] (Id.)

   As injury, plaintiff states he is in severe pain due to the lesion pressuring nerves, he lost
21 range of motion, suffers paralysis to his left hand, and has daily shocking and fluttering pain in
22 his bicep and forearm that is getting worse. (Id.)

   C. Relief Sought

   Plaintiff seeks monetary damages, attorney fees, and costs of suit. (Id. at 7.)

---

[1] In his original complaint, plaintiff alleged that the nurse snatched the cuff off plaintiff's arm, and the cuff was still inflating. (ECF No. 1 at 7.)

[2] To the extent plaintiff refers to medical treatment (or lack thereof) while housed at Pelican Bay State Prison, plaintiff must address any civil rights violations occurring at Pelican Bay State Prison in an action filed in the Northern District of California.

     D. <u>Defendants</u>

In the caption of the FAC, plaintiff names the Sacramento County Main Jail as the sole defendant. (<u>Id.</u> at 1.) However, in the defendants' section of the FAC, plaintiff again names the Sacramento County Mail Jail as the first defendant, but adds "Deputy on duty in 5th Floor east control, Sacramento County Jail." (<u>Id.</u> at 2.) No other defendants are listed. (<u>Id.</u>)

II.    SCREENING STANDARDS

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989); <u>Franklin v. Murphy</u>, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous when it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. <u>Neitzke</u>, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. <u>See</u> <u>Jackson v. Arizona</u>, 885 F.2d 639, 640 (9th Cir. 1989), <u>superseded by statute as stated</u> in <u>Lopez v. Smith</u>, 203 F.3d 1122, 1130-31 (9th Cir. 2000) ("[A] judge may dismiss [in forma pauperis] claims which are based on indisputably meritless legal theories or whose factual contentions are clearly baseless."); <u>Franklin</u>, 745 F.2d at 1227.

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." <u>Bell Atlantic</u>, 550 U.S. at 555.

4

1   However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the

2   defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v.

3   Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atlantic, 550 U.S. at 555, citations and internal

4   quotations marks omitted).  In reviewing a complaint under this standard, the court must accept as

5   true the allegations of the complaint in question, Erickson, 551 U.S. at 93, and construe the

6   pleading in the light most favorable to the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236

7   (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984).

8   III.   DISCUSSION

9        A.  Defendants

10      Plaintiff's FAC states a potentially cognizable Fourteenth Amendment claim against the

11  Sacramento County Deputy Sheriff working the 5 east control room on October 7, 2022[3] and

12  October 18, 2022, for deliberate indifference to plaintiff's serious medical needs.  However,

13  plaintiff does not clearly identify this defendant in the caption of his FAC.  Fed. R. Civ. P. 10(a).

14  Even though plaintiff does not know the name of this defendant, he must include the defendant in

15  the caption of the complaint.

16      Plaintiff includes no charging allegations as to the Sacramento County Main Jail, so

17  including the jail as a named defendant is inappropriate.

18      Further, there are no allegations tying the 5 east control room deputy to the incidents that

19  took place after October 18, 2022, while plaintiff was housed in 6 west.  Thus, if plaintiff

20  intended to pursue the alleged claims based on those subsequent incidents, he must specifically

21  identify each individual responsible for such incidents.  For example, if he intended to sue the

22  deputy in 6 west control room for the alleged deliberate indifference to plaintiff's serious medical

23  needs, plaintiff must include such deputy in the caption of his complaint as well as in the

---

[3] It is unclear whether plaintiff intended to use October 7, 2022, or whether he meant October 17, 2022, because in his motion for subpoena filed prior to the FAC, plaintiff sought the name of the deputy on duty October 17 and 18, 2022.  (ECF No. 13 at 1.)  Because plaintiff is unaware of the names of the individuals he intends to sue in this action, it is critical that plaintiff provide accurate dates the individual allegedly violated plaintiff's rights.

5

defendants' section of the complaint.[4]  In addition, because plaintiff does not know the identity of such individuals, he should include the date of the alleged violation, as well as the time (if he knows or can approximate) and include any identifying features plaintiff can remember to assist in identifying the appropriate defendant.

To be clear, plaintiff must include each individual he intends to sue in both the caption of his second amended complaint, for example, "John Doe Deputy 5E200 POP," and in the defendants' section of the second amended complaint, where he can include additional identifying information and features, if known.

### B. Medical Claim

Despite the Court's prior screening order, plaintiff renewed his claim that the nurse was deliberately indifferent by using the automatic blood pressure cuff.

A claim for a violation of a pretrial detainee's right to adequate medical care arises under the Fourteenth Amendment rather than the Eighth Amendment.  See Gordon v. Cnty. of Orange, 888 F.3d 1118, 1125 n.4 (9th Cir. 2018).  The claim is evaluated under an objective deliberate indifference standard.

> [T]he elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are:  (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

Id. at 1125.

For the third element, the defendant's conduct must be objectively unreasonable, "a test that will necessarily turn[ ] on the facts and circumstances of each particular case." Id. (citations and internal quotation marks omitted).  The four-part test articulated in Gordon requires the plaintiff to prove more than negligence, but less than subjective intent—something akin to

---

[4] In his motion for subpoena filed prior to the FAC, plaintiff sought the names of deputies on duty in 6w200 pod on October 22, 2022.  (ECF No. 13 at 1.)

6

reckless disregard.  See id.  Mere negligence and a simple lack of due care do not violate the Fourteenth Amendment.  See Castro v. Cnty. of Los Angeles, 833 F.3d 1060, 1071 (9th Cir. 2016).

As plaintiff was previously advised, his allegations concerning the blood pressure cuff fail to demonstrate that the unidentified nurse's use of the automatic blood pressure cuff was objectively unreasonable.  Plaintiff now alleges that the nurse used the cuff "incorrectly" by leaving it "unattended and as a[n] automatic monitor."  (ECF No. 14 at 6.)  However, the use of automatic blood pressure machines is not objectively unreasonable; indeed, most medical clinics and hospitals routinely use them.  Moreover, plaintiff admits that the first two times the automatic cuff was engaged, it did not inflate; it was not until the third time that the cuff overinflated.  This suggests a malfunctioning of the automatic blood pressure cuff, not that the nurse used the cuff incorrectly or caused the cuff to overinflate.  Importantly, in his original complaint, signed under penalty of perjury, plaintiff stated that when the cuff overinflated, and he yelled in pain, the nurse snatched the cuff off plaintiff's arm, yet the cuff continued to inflate.  (ECF No. 1 at 7.)  Thus, while plaintiff now claims that the nurse left the cuff unattended, his prior statement that she snatched the cuff off plaintiff's arm when he yelled demonstrates the nurse was nearby, and further suggests the cuff was malfunctioning.  While plaintiff contends he suffered serious injury as a result, he alleges no facts that suggest the nurse knowingly used a malfunctioning or defective automatic blood pressure cuff,[5] and it appears the overinflated cuff was only applied for a brief period because the nurse snatched it off when plaintiff yelled.  It does not appear that plaintiff can amend to state a cognizable civil rights claim in connection with the application of the blood pressure cuff.  Unless plaintiff can, in good faith, include additional facts meeting each of the elements required under Gordon, 888 F.3d at 1125, plaintiff should not renew this claim in his second amended complaint.

///

---

[5]  See Smith v. Phoenix Techs. Ltd., 2011 WL 5444700, at *2 (N.D. Cal. Nov. 9, 2011) ("the Court does not have federal question jurisdiction over this state law products liability action.").

7

C. Putative State Law Claims

In both claims, plaintiff again alleges defendant breached the standard of care or failed to meet the standard of care. (ECF No. 14 at 4, 5.) As plaintiff was previously advised (ECF No. 10 at 7), the "mere lack of due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." Gordon, 888 F.3d at 1125. Further, plaintiff again failed to plead compliance with the California Government Claims Act.[6] The requirements of pleading a state law claim were set forth in the Court's prior screening order and are not repeated here. (ECF No. 10 at 7-8.) If plaintiff did not comply with the California Government Claims Act, he should not include his allegations concerning the standard of care in any second amended complaint.

D. Doe Defendants

Plaintiff does not know the names of any of the individuals who plaintiff claims violated his rights while he was housed in the Sacramento County Jail. The Ninth Circuit has held that where a defendant's identity is unknown prior to the filing of a complaint, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities or that the complaint would be dismissed on other grounds. Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980)). However, plaintiff does not identify each individual as a "defendant doe" in connection with his or her alleged act or omission which plaintiff contends violated his constitutional rights. This is insufficient to put prospective defendants on notice of who plaintiff intends to sue in this action as well as his or her alleged actions or omissions that plaintiff claims violate his federal rights. In order to link these doe defendants to the alleged acts or omissions that demonstrate a violation of plaintiff's federal rights, plaintiff is granted leave to amend to list the doe defendants he intends to sue by this action. If plaintiff can

---

[6] See Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal., 730 F.3d 1111, 1124 (9th Cir. 2013) ("Consistent with the California Supreme Court, we 'adopt the practice of referring to the claims statutes as the Government Claims Act, to avoid the confusion engendered by the informal short title Tort Claims Act.'" (quoting City of Stockton v. Superior Court, 42 Cal. 4th 730, 68 Cal. Rptr. 3d 295 (2007)).)

8

only list these defendants as John Doe, plaintiff must identify the John Doe as best as possible, and allege specific acts that each doe defendant did, such as "John Doe 1 did X" and "John Does 2 and 3 did Y," as well as the specific date and, if possible, the approximate time involved. Plaintiff is reminded that "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).

### E. Leave to Amend

In light of the above deficiencies, plaintiff's FAC must be dismissed. The Court will, however, grant leave to file a second amended complaint.

If plaintiff chooses to amend the FAC, plaintiff must demonstrate how the conditions about which he complains resulted in a deprivation of plaintiff's constitutional rights. See, e.g., West v. Atkins, 487 U.S. 42, 48 (1988). Also, the second amended complaint must allege in specific terms how each named defendant is involved. Rizzo v. Goode, 423 U.S. 362, 371 (1976). There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo, 423 U.S. at 371; May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980). Furthermore, vague and conclusory allegations of official participation in civil rights violations are not sufficient. Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

In addition, plaintiff is informed that the Court cannot refer to a prior pleading in order to make plaintiff's second amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. This requirement exists because, as a general rule, an amended complaint supersedes the original complaint. See Ramirez v. Cnty. of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015) ("an 'amended complaint supersedes the original, the latter being treated thereafter as non-existent.'" (internal citation omitted)). Once plaintiff files a second amended complaint, the original pleading no longer serves any function in the case. Therefore, in a second amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

///

9

IV. MOTION FOR ASSISTANCE WITH SUBPOENAS

Plaintiff has filed multiple motions for assistance in serving subpoenas in an effort to identify the individuals he seeks to sue in this action. (ECF Nos. 13, 15.)

"As a general rule, discovery proceedings take place only after the defendant has been served; however, in rare cases, courts have made exceptions, permitting limited discovery to ensue after filing of the complaint to permit the plaintiff to learn the identifying facts necessary to permit service on the defendant." Columbia Ins. Co. v. seescandy.com, 185 F.R.D. 573, 577 (N.D. Cal. 1999). Where a plaintiff does not know the identity of the defendants, the Ninth Circuit has found that a plaintiff "should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." Gillespie, 629 F.2d at 642) (citations omitted).

Courts within the Ninth Circuit generally consider whether a plaintiff has shown "good cause" for early discovery. See, e.g., Semitool, Inc. v. Tokyo Electron America, Inc., 208 F.R.D. 273, 275-77 (N.D. Cal. 2002); Uber Techs., Inc. v. Doe, 2015 WL 1205167 (N.D. Cal. Mar. 16, 2015). To determine whether a plaintiff established good cause, courts consider whether the plaintiff has: (1) identified the Doe defendant with sufficient specificity as a real person who can be sued in federal court; (2) recounted the steps taken to locate and identify the defendant; (3) shown that the action can survive a motion to dismiss; and (4) established that the discovery is reasonably likely to lead to identifying information that will permit service of process. Dhillon v. Does 1-10, 2013 WL 5367783, at *1 (N.D. Cal. Sept. 25, 2013) (citing Columbia Ins. Co., 185 F.R.D. at 578-80). Good cause may be found "where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." Assef v. Does 1-10, 2015 WL 3430241, at *2 (N.D. Cal. May 28, 2015) (internal quotation marks and citation omitted).

At this juncture, the Court is unable to address the issue of a subpoena because plaintiff's FAC is being dismissed, and plaintiff is granted leave to amend. Plaintiff is advised that the Court is unable to address the issue of a subpoena until plaintiff's second amended complaint has

been screened and the Court determines that plaintiff states a cognizable claim against each John or Jane Doe defendant. In addition, as noted in the screening the FAC above, plaintiff must identify each John or Jane Doe he intends to sue, and provide sufficient information to identify each individual. Finally, as to each potential John or Jane Doe defendant, plaintiff must establish good cause for the early discovery. See Dhillon, 2013 WL 5367783, at *1.

In the February 10, 2025 motion, plaintiff identifies the deputy on duty October 17 and 18, 2022, afternoon shift, in 5E200 pod at the Sacramento County Jail. (ECF No. 13 at 1.) Plaintiff also asks for assistance in identifying "the names of deputies on duty in 6w200 pod on October 22, 2022, when plaintiff was removed from cell 6w228." (Id.) But plaintiff should provide a time, if possible, and be clear as to how many deputies he claims violated his Fourteenth Amendment rights. Because plaintiff will need to subpoena the Sacramento County Jail to obtain the identities of these John or Jane Doe defendants, he must provide as much additional information as possible.

Thus, plaintiff's motions for assistance with subpoenas are denied as premature. (ECF No. 13, 15.) After filing the second amended complaint, alleging specific facts showing how each particular Doe defendant violated plaintiff's rights, and passing the Court's screening under 28 U.S.C. §§ 1915(e)(2)(B) and § 1915A(b), the Court will consider one motion for early or expedited discovery in which plaintiff addresses good cause under Dhillon, and provides as much information as possible to assist the County in identifying the John or Jane Doe defendants, including the specific dates and times, if possible, for each alleged violation. If the Court grants the motion for early or expedited discovery, the Court will provide plaintiff a subpoena form with further instructions.

V.    MOTION FOR CAMERA FOOTAGE

Plaintiff also sought to subpoena the camera footage from the deputies' body cameras. (ECF Nos. 13, 15.) Plaintiff's motion is premature. No defendant has been served or appeared in this action. Once a defendant has filed an answer, and the Court has issued a scheduling order addressing briefing and deadlines for discovery, plaintiff may seek discovery from an appropriate defendant. Plaintiff's motions for camera footage (ECF Nos. 13, 15) are denied as premature.

11

VI. DEMAND FOR SUMMARY JUDGMENT

On April 30, 2025, plaintiff filed a document styled, "Demand for Summary Judgment." (ECF No. 16.) In this filing, plaintiff claims he received a letter from the risk management office for the County of Sacramento, citing Claim No. L2400770-0001, loss date October 22, 2022. (Id. at 1.) Plaintiff responded to the letter, but has heard nothing from them. (Id.) Plaintiff claims his filing is a demand for summary judgment for the relief stated in the instant case. (Id.) Plaintiff is advised that any settlement negotiations between him and the County's risk management office are confidential and not part of this lawsuit. Thus, his demand for summary judgment in this case is improper. Further, any motion for summary judgment in this case is premature. See Fed. R. Civ. P. 56. No defendant has yet been served, and discovery has not yet been conducted. Once a defendant has filed an answer, the Court will issue a scheduling order that sets deadlines for the completion of discovery and pretrial motions, including summary judgment motions. **Plaintiff shall refrain from filing any further pretrial motion, including summary judgment motions, until after the Court has issued its scheduling order.**

VII. MULTIPLE MOTIONS

Plaintiff previously filed a request for assistance in serving subpoenas (ECF No. 9) which was denied as premature (ECF No. 10). Plaintiff subsequently filed two additional motions, and the last motion duplicated relief sought in the prior motions. In so doing, plaintiff unduly burdened this court's resources. "Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters." Cortez v. City of Porterville, 5 F. Supp. 3d 1160, 1162 (E.D. Cal. 2014); Foust v. Hall, 2016 WL 3019394, at *5 (E.D. Cal. May 26, 2016) ("the Eastern District of California maintains one of the heaviest caseloads in the nation, a significant portion of which is comprised of pro se inmate cases."). **Plaintiff is cautioned that duplicative filings only delay the handling of his case. Plaintiff shall refrain from filing duplicative motions.**

VIII. CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's first amended complaint (ECF No. 14) is dismissed.

12

2. Within thirty days from the date of this order, plaintiff shall complete the attached Notice of Amendment and submit the following documents to the court:

    a. The completed Notice of Amendment; and

    b. An original of the Second Amended Complaint.

Plaintiff's second amended complaint shall comply with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice. The second amended complaint must also bear the docket number assigned to this case and must be labeled "Second Amended Complaint."

Failure to file a second amended complaint in accordance with this order may result in the dismissal of this action.

3. Plaintiff's motions for assistance with subpoenas (ECF Nos. 13, 15) are denied.

4. Plaintiff's motions to subpoena camera footage (ECF Nos. 13, 15) are denied without prejudice.

5. Plaintiff's filing styled, "Demand for Summary Judgment," (ECF No. 16) is denied without prejudice.

Dated: May 15, 2025

                                              CHI SOO KIM
                                              UNITED STATES MAGISTRATE JUDGE

/1/kern2615.14b+

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES CURTIS KERN,<br><br>           Plaintiff,<br><br>     v.<br><br>SACRAMENTO COUNTY MAIN JAIL,<br><br>           Defendant. | No. 2:24-cv-2615 WBS CSK P<br><br><br>NOTICE OF AMENDMENT |

   Plaintiff submits the following document in compliance with the Court's order filed on _____ (date).

   ☐   Second Amended Complaint
       (Check this box if submitting a Second Amended Complaint)


DATED:

                              _____
                              Plaintiff